## ALBERT G. JENKINS v. REUBEN L. DEWEY.

DEED OF LAND BY WIFE—*Non-joinder of Husband—Adverse Possession—Action, Barred.* A married woman who owned land in her own right, which was not occupied as a homestead, conveyed the same by warranty deed, but her husband did not join in the conveyance. It was the understanding and intention of both the wife and the husband that the grantee should be invested with an absolute fee-simple title, and the only reason why the husband did not sign the deed was because he was advised and understood that his signature was unnecessary to a perfect title. The grantee took and has held open, notorious and exclusive possession under his conveyance, claiming absolute title as against every one, and the husband of the grantor understood and acquiesced in that claim for more than 18 years. Sixteen years and two months after conveyance was made and possession taken, the wife died, leaving the husband, who, about two years afterward, for the first time, claimed that as he had not signed the deed he was not divested of his contingent interest in the land, and that, as the survivor of his wife, he was entitled to a one-half interest therein. *Held*, In an action by the grantee to quiet title, that the inchoate right of the husband in the land was effectually barred at the end of 15 years after the land was conveyed and the grantee placed in possession, and that the grantee had acquired a perfect title to the land before the death of the wife.

4—49 KAS.

*Error from Bourbon District Court.*

ACTION to quiet title. Judgment for plaintiff, *Dewey*, at the May term, 1889. The plaintiff, *Jenkins*, comes to this court.

*Dillard & Padgett*, for plaintiff in error:

Under §§ 8 and 28, chapter 33, General Statutes of 1889, plaintiff in error would be entitled to one-half the land in controversy unless he is barred by some statute of limitations, or is estopped from asserting his claim to the same.

1. Is plaintiff in error barred by any statute of limitations? The court below held that he was, by ¶ 4 of § 16, chapter 80, General Statutes of 1889.

This section did not and could not begin to run against plaintiff in error until the death of his wife, which occurred only about two years before the commencement of this action. The nature of the wife's interest in her living husband's real estate, not their homestead, has been determined by this court. And the interest of a husband in the real estate of his living wife must necessarily be the same. *Busenbark v. Busenbark*, 33 Kas. 577; and affirmed in *Munger v. Baldridge*, 41 id. 243. See also *Buffington v. Grosvenor*, 46 Kas. 734. The interest of each spouse in the property (real) of his or her living consort is such that either may maintain an action during the life of the other for its protection, and for relief from its fraudulent alienation by that other. But we apprehend that it will not be contended, in this court at least, that in a case like the one at bar any action could be maintained by either a husband or a wife against a purchaser from the other, until the death of that other.

The statute does not begin to run against a person until he has the right to bring an action. Tied., Real. Prop. (1 ed.), § 715. No possession can be deemed adverse to a party who has not at the time the right of entry and possession. *Devyr v. Shaefer*, 55 N. Y. 446. It is well settled that the statute

of limitations does not begin to run against a remainder man in favor of one to whom a life tenant has conveyed the whole estate until the death of the life tenant. *Butler v. McMillan*, (Ky.), 11 S. W. Rep. 362; *Gudgill v. Tydings* (Ky.), 10 id. 466; *May v. Scott* (Ky.), 14 id. 191, 340; *Lamar v. Pearre* (Ga.), 9 S. E. Rep. 1043; *Taylor v. Kemp* (Ga.), 12 id. 296.

2. Is plaintiff in error estopped from now asserting his interest? If he is estopped, it must be either by his actions and conduct at the time of the execution of the deed by his wife to Munday, or by his actions and conduct since. This court, adopting the rule laid down by Bigelow, has very fully declared what is necessary to constitute an equitable estoppel, in the case of *Kraft v. Baxter*, 38 Kas. 356. Every element there declared to be essential is wanting in the case at bar. There was no false representation or concealment of any fact; there was no knowledge on the part of the husband of any fact not known to the purchaser; the purchaser was not ignorant, actually or permissibly, of the truth of any fact known to the husband; and there was no intention, actual or virtual, on the part of the husband, that the purchaser should, nor any inducement held out by the husband to him to, act in taking the deed without the husband's signature.

The allegations of the petition, that the defendant in error and his grantors had held open, notorious and continued possession of the land in controversy for eighteen years; that the said land had doubled in value; that valuable and lasting improvements had been made upon it by the defendant in error, and that the taxes for all these years had been paid by him and his grantors, and the argument made thereon, unquestionably influenced the court below against plaintiff in error, and in favor of the equities of defendant in error. No force should be given to these allegations or this argument, for the reason that, beyond doubt, defendant in error is entitled to the benefit of art. 25, ch. 80, Gen. Stat. of 1889, with reference to occupying claimants.

*E. F. Ware*, for defendant in error:

1. What was the right which Mr. Jenkins had in his wife's land? There is yet no name for it. It has not received a particular definition. There is nothing like it in the old books. It is peculiar to our state. But, whatever the estate was (and we call it a "Kansas marriage right" if we wish), the position of Mr. Jenkins may be called that of an heir. This principle was fully argued in *McKinney v. Stewart*, 5 Kas. 384, and the court declared the position of the survivor to be that of an heir. The court says: "It is argued that she cannot be an heir at all. . . . This statute may make any person an heir. . . . In this sense the wife is an heir of the deceased husband."

See also *Dodge v. Beeler*, 12 Kas. 524, and *Schermerhorn v. Mahaffie*, 34 id. 108. In the latter case the court says that Mrs. S. died, leaving as her heirs her husband and three children. It is established fully in Kansas that a husband may be the heir of his wife, and there is nothing absurd to it, for in law a little girl may be the ancestor of her grandfather. Rap. Law. Dic. "Heir."

Mrs. Jenkins conveyed her own land by warranty deed, binding her heirs as to the title. Her warranty deed bound her husband as one of the heirs. Where is the equity when she sells her land for full value, and then dies and leaves her husband the money and one-half of the land? The heir who receives land from his ancestor is bound *pro tanto* for the ancestor's debts. No land would descend from a deceased wife to her husband except such as was not necessary to pay debts. If the wife's warranty deed failed, her estate would be liable. She had a right to make a warranty deed to property that she bought with her own money, even if she was married. Suppose he signed no deed: can he bring ejectment after her death? It seems that he must go into the probate court. That is what the statute says: The probate court is the only court that can give him relief, and give the purchaser a chance, if losing the land, to put in a claim against the estate.

And the heir must do this within five years. Gen. Stat. of 1889, ¶ 2601.

In the case at bar, more than five years have now elapsed and no application; but this point is not here now for discussion. The probate court is the only court that can hear and make the allotment of the "Kansas marriage right," and, having heard and allotted, then, and only then, can the allottee "bring suit to obtain possession," *i. e.*, ejectment. Gen. Stat. of 1889, ¶ 2606. If a wife has a piece of property not a homestead, worth $5,000, she can legally mortgage it for $5,000, without her husband joining. Her husband could not get the land clear without paying $5,000; but if she sold it for $6,-000 and gave the money to her husband, it is claimed that he could get back half the land for nothing if he did not join in the deed. Somehow that does n't look reasonable; but our probate-court theory would remedy the apparent defect.

2. But if the husband is not an heir—if the "Kansas marriage right" is in the nature of a vested interest—then a different rule would prevail; then the husband would have a right of action. In the Buzenbark case, 33 Kas. 572, the court distinctly recognizes the doctrine that fraud upon the Kansas marriage right could be made the subject of an immediate and direct action. The court says:

"We now go further, and declare that although the wife's right and interest in the real estate of her husband not occupied as a homestead is inchoate and uncertain, yet it possesses the element of property to such a degree that she may maintain an action during the life of her husband for its protection, and for relief from fraudulent alienation by her husband. Page 577.

It may be asserted that Kansas courts will give at all times relief as to fraud against the Kansas marriage right. The person injured need not wait until the death of spouse, but can begin the action as soon as fraud is discovered. An action for relief on the ground of fraud is barred in two years from date of discovery. Gen. Stat. of 1889, ¶ 4095. If the transfer by Mrs. Jenkins was a fraud on her husband's marriage

right, then he had an action which accrued on October 1, 1870; said action is now barred. If the transfer was not in fraud of said marriage right, then the husband never had a cause of action, and never will. The petition in this case distinctly states that the sale was not made for the purpose of defrauding the husband, and the demurrer admits the truth of the statement. In two years after the giving of the deed that conveyed the land away, the husband knowing thereof would lose his right to attack the deed on account of fraud, and the deed would stand. The time from which the occupant of the land might date his adverse holding, under this theory, would be the time when the husband knew of the execution of the deed, for then the husband could bring an action.

The grantor may live one year or 60 years, and still the "action for relief on the ground of fraud" remains dormant. Upon death of the grantor the right accrues, and lasts for two years. Then it is ended, unless the fraud is wholly concealed and not previously discovered, which is not this case.

As this suit was not brought until over two years after the death of the grantor, the right of the husband had become barred. In this case it took over 18 years to bar the right.

The court struck boldly out and took a theory of its own, and it was this: The statutes of descents and distributions and the statutes of limitation were all passed as of the same date, October 31, 1868, and must be construed *in pari materia;* that the rights of those claiming under statutes of descent were modified by the rights of those claiming under statutes of limitation; that both statutes must stand, and that one statute could not override the other; and that no court could graft exceptions on the plain terms of the statutes of limitation. The court held that as the grantee received from the owner of the complete record title a full warranty deed, therefore, claiming to own all the property, the grantee's title was adverse to everybody, and that 15 years of open, notorious and exclusive possession, under claim of absolute title, disposed of the statute of descents as far as Mr. Jenkins was concerned.

This is a broad-shouldered and untechnical view of things. Nor is this view of things overthrown by the brief of the plaintiff in error, because the Kansas marriage right is entirely different from the rights in cases cited by him, which, upon examination, will be found to be based upon curtesy and dower rights, reversions and vested remainders, all of which are totally different in character and theory from the Kansas marriage right, and are governed by rules that have been property law for centuries.

*Dillard & Padgett,* for plaintiff in error, in reply:

That the warranty deed of Mrs. Jenkins binds plaintiff in error as one of her heirs, nullifies the plain provisions of §§ 8 and 28, ch. 33, Gen. Stat. of 1889; and it would only be necessary for a husband to make a warranty deed of his property to forever destroy his wife's interest after his death therein. It is true that an heir, to the extent of property received from an ancestor, is bound for that ancestor's debts; but how can that doctrine be applied in the case at bar? The measure of damages for a breach of a covenant such as is set forth in brief of defendant in error would be the amount of purchase-money with interest. The petition alleges that the land has more than doubled in value since the deed of Mrs. Jenkins to Munday. How can this court say that the liability of the husband for the debt of his wife created by such a covenant would cover the whole of his interest in her land? Such questions can only be settled in a suit brought for that purpose.

It is alleged in the petition in the court below that no fraud was contemplated or committed upon this husband by his wife, and yet he would have this court hold that she committed by her deed a constructive fraud upon his rights.

We reassert that the mere execution of a deed by a married person without the signature of the spouse can in no way work any fraud upon the rights of that spouse; for if it could, every conveyance by a married man, without the joining of his wife, would be fraudulent as to her, and would start the statute of limitations running against her and in favor of the grantee

of the husband, and compel her within two years to bring a suit for the protection of an interest which she might never acquire.

We are confidently of the opinion that we demolished in our brief the "broad-shouldered and untechnical view" of this case taken by the court below. And counsel can only urge in its defense the equities of defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought by Reuben L. Dewey to quiet his title to a tract of land in Bourbon county, as against Albert G. Jenkins, who claimed an interest in the same. Judgment was given in favor of Dewey, and the question presented for review arises upon the facts stated in his petition. The averments of the petition substantially show that on October 1, 1870, Harriet I. Jenkins, the wife of Albert G. Jenkins, was the owner of the land in controversy as of her own separate estate, and was in possession of the same by a tenant, but neither she nor her husband had ever occupied the land as a homestead. On the day mentioned, she conveyed the land to one Munday by warranty deed, which contained all the usual covenants, and placed Munday in possession of the property, but her husband did not join in the execution of the deed, "for the reason that he claimed it to be the property of his wife, and it was not at the time thought necessary that he should sign it in order to convey a clear and perfect title; and although he fully knew all the facts concerning the sale, he claimed no interest, was not asked to sign the deed, and considered the deed as conveying an absolute fee-simple title to the property, such being the advice given by a legal friend at the time, and the said conveyance was not made for the purpose of defrauding the husband." Thereafter, Munday conveyed the property by warranty deed to another, and by a chain of mesne conveyances, all by deed of general warranty, the land became the property of Dewey. During all the time from the original conveyance to Munday, all the grantees and owners of the

land have claimed full ownership of the same in fee-simple absolute, and have had the open, notorious, peaceable and exclusive possession of the land, and have paid all the taxes thereon. During all the time there has been a dwelling-house upon the land, in which the owners and their families, or tenants, have continuously dwelt, but Jenkins, who has always lived near to the land and been acquainted with all the facts, has never claimed the same nor intimated to any of the owners of the property that he had any interest therein; in fact, through all these years he never supposed that he had any interest in the property, and the matter had passed from his memory and recollection. After Munday and those holding under him had been in the open, adverse and unquestioned possession of the property for 16 years and two months, Harriet I. Jenkins died, leaving as her survivor her husband, Albert G. Jenkins; but he never raised any question as to the title of the property until more than two years after the death of his wife, when, upon an examination of the title by a proposed purchaser, it was discovered that Jenkins had not joined his wife in the conveyance. The supposed defect in the title having come to the attention of Jenkins, he claimed an undivided one-half interest in the property. Mrs. Jenkins died on December 1, 1886, and her surviving husband made no claim on the property until December 1, 1888; and it is alleged that the property had doubled in value since the original sale by Mrs. Jenkins to Munday, on October 1, 1870. The sufficiency of these facts was challenged by demurrer, and the district court held that Jenkins had no right or interest in and to the premises, and gave judgment accordingly.

Jenkins contends that his wife owned the property during the marriage, and as it had not been sold on execution or other judicial sale, and was not necessary for the payment of the debts of his wife, and that as he had made no conveyance of the same, he was entitled to a one-half interest in the land under the statute of descents and distributions. Gen. Stat. of 1889, ¶¶ 2599, 2619. His contention cannot be sustained.

Under the circumstances, his silence and acquiescence for more than 15 years effectually bar him, and perfects title in Dewey. Although he did not join in the conveyance, it was his understanding and purpose that the grantee should take the complete title, including the possible interest which he might have as the survivor of his wife. He and his wife both intended that the grantee should be invested with an absolute fee-simple title, and the only reason why he did not sign the conveyance was because he had been advised and believed that his signature was unnecessary to a perfect title. The grantee understood he was obtaining a complete estate, with every possible or contingent interest incidental to the ownership of the grantor. With this understanding he took the exclusive possession of the land, and he and those holding under him had held notorious, exclusive, continuous and adverse possession against Albert G. Jenkins and every one else for more than 16 years before Mrs. Jenkins died. Jenkins lived in the neighborhood, saw the improvements made, knew that the taxes were being paid, was informed of the exclusive and hostile character of the possession taken by these owners, and understood that they were claiming every vestige of title in the land; and yet he remained silent for more than 18 years, and did not claim any interest until two years after the death of his wife. It was then too late. The 15-years statute of limitations had then run, and had cured the original defect in the conveyance. The statute of limitations began to run as soon as the occupation and possession became adverse. The understanding and intention of the parties have much to do in determining the adverse character of the possession; and it is generally held that, where there is an occupation attended with a clear intent to hold against all other persons, the possession is adverse to all. Busw. Lim., §§ 233, 237. The occupation of the land in question by the grantees of Mrs. Jenkins, with the intent to claim all the title against her and her husband, together with their knowledge of such claim, made the possession adverse as to both. Instead of asserting title or instituting some appropriate proceeding to preserve his

contingent interest when he found that the grantee was claiming a perfect title, he, with full knowledge of the adverse claim and occupation of the premises, allowed his possible and incidental interest to be completely extinguished.  This contingent interest is no more sacred and it cannot escape the bar of the statute any more than the principal title or estate to which it is a mere incident.  If no deed had been made by Mrs. Jenkins, and the grantee had taken the open, notorious and exclusive possession of the land, claiming ownership of the same against every one, he would have acquired a title at the end of 15 years which would have effectually extinguished the title of Mrs. Jenkins and the inchoate interest of her husband.  The result cannot be different where Mrs. Jenkins, the owner of the land, has made a formal conveyance of the same.  Before she died the complete title had been divested by the statute of limitations; and hence there was nothing to descend to her husband.

We think the district court ruled correctly in overruling the demurrer, and hence its judgment will be affirmed.

All the Justices concurring.