Poole v. French.

M. M. POOLE, *Appellee,* v̇. N. M. FRENCH, *Appellant,.* and· LOUISA ANN CHRISTENSEN *et al., Appellees.*

No. 16,352.

SYLLABUS BY THE COURT.

1. PRACTICE, SUPREME COURT—*Immaterial Errors—Pleadings.* The· district court will not be reversed for an erroneous ruling concerning the form of pleadings in an action, when it is clear that no prejudice resulted therefrom.

2. DESCENTS AND DISTRIBUTIONS—*Right of Widow Who Did Not Sign a Conveyance Executed by Her Husband—Limitation of Actions — Adverse Possession — Ratification — Estoppel.* Whether or not under the facts of this case section 2942 of the General Statutes of 1909 applies we express no opinion, but if it does and the plaintiff was entitled to receive one- half of the interest held by her deceased husband in the land in controversy during his lifetime, then we hold that she lost. such interest by her acquiescence, ratification and consent and by estoppel, and also by the statute of limitations, more than fifteen years having elapsed after the conveyance by her hus- band and after the grantees thereunder had taken adverse possession of the land conveyed before she asserted any right thereto.

3. MORTGAGES—*Extension of Time of Payment—Substitution of New Note and Mortgage — Rights of Junior Lienhold- ers.* An owner of real estate executed a promissory note and secured it by a mortgage upon the land, such mortgage being a first lien thereon. He subsequently sold the mortgaged premises. to a purchaser who, as part of the consideration for the convey- ance, assumed and agreed to pay all the encumbrances thereon. The purchaser of the land and the holder of the aforesaid note and mortgage agreed ·that the time of payment should be extended and a new note and mortgage executed by the purchaser of the mortgaged premises, payable at the time as.

extended, and such new note and mortgage should be substituted for those then held by the mortgagee, and that the priority of liens should not be changed or in any way affected thereby. *Held*, that such transaction was valid and binding, not only between the parties, but also upon the holders of subsequent liens.

4. ——— *Priority of Liens—Limitation.* In such a case the mortgage so given would continue to be a first lien until the note last executed became barred by the statute of limitations.

5. ——— *Limitation of Actions—Acceleration of Maturity—Default in Payment of Interest.* Where a mortgage contains a clause which reads, "If said sum or sums of money or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes . . . which are . . . levied against the said premises or any part thereof are not paid when the same are by law made due and payable, then the whole of said sum or sums and interest thereon shall by these presents become due and payable," a default will not occur thereunder until the failure to pay taxes and interest both concur.

6. LIMITATION OF ACTIONS—*Widow Who Did Not Join in Conveyance by Her Husband—Adverse Possession.* The statute of limitations begins to run against a widow claiming under section 2942 of the General Statutes of 1909 when the husband makes the conveyance and the grantee takes adverse possession of the land.

7. JUDICIAL SALES—*Proceeds Remaining after Satisfaction of Execution—Ownership and Disposition.* Where land is sold by a sheriff under execution, and more money is paid than necessary to satisfy the execution, the excess belongs to whoever owns the land; and when it is paid into court as a part of the proceedings in an action to which the then owner of the land is not a party an order of the court disposing of such money, without notice to and without the knowledge or consent of the owner of the land, is without jurisdiction and is void.

8. DESCENTS AND DISTRIBUTIONS—*Husband and Wife—Conveyance Executed by Husband—Adverse Possession by Grantee—Widow Barred by Limitation, Acquiescence and Laches.* A widow in an action of partition claimed, under the provisions of section 2942 of the General Statutes of 1909, an undivided one-half of the real estate involved. Upon the trial it appeared more than fifteen years had elapsed after the conveyance by her husband, and after the grantees had taken adverse possession of the land conveyed, claiming to be the

Poole v. French.

absolute owners thereof, before she asserted any right or claim to the property. The grantees to whom the conveyance was made were the sons of the widow and her husband, and she had full knowledge of the transaction, fully consented thereto, and only failed to join in the execution of the conveyance for the reason that it was deemed unnecessary. The total consideration received from the sons for the land was $2916. Of this amount the mother insisted upon receiving, and did receive at the time, $1000. Subsequently, in a division of property between herself and her husband, made in view of a permanent separation, she received an additional part of the purchase price of the land, the total sum received amounting in the aggregate to $2207, including the $1000. The sum consisted of promissory notes secured by a mortgage on the land. The grantees took possession of the premises immediately after the conveyance, claimed to be the absolute owners thereof, and erected permanent and valuable improvements thereon. Of this the mother had full knowledge. The land subsequently passed into the possession of a third party, who held it as security for a large indebtedness due to him from the original grantees of the husband; and while it was being so held the mother induced her daughter to purchase it, and, as part consideration therefor, assume and agree to pay all the encumbrance thereon, including that held by her. The daughter made such purchase, and in fulfillment of her agreement assumed and agreed to pay the debt held by her mother against the land. Under these facts the widow can not recover in the partition suit. She is barred by the statute of limitations, and also by consent, acquiescence and laches amounting to an estoppel.

Appeal from Cloud district court. Original opinion filed July 9, 1910. Affirmed. Opinion denying a rehearing filed November 5, 1910.

*A. M. French, Charles L. Hunt,* and *Park B. Pulsifer,* for the appellant.

*A. L. Wilmoth,* and *Ernest S. Ellis,* for the appellees; *Ellis, Cook & Barnett,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: On October 17, 1905, M. M. Poole commenced an action in the district court of Cloud county against Louisa Ann Christensen, N. M. French, C. E.

French and DeWitt C. Poole, to foreclose a mortgage upon the real estate in controversy herein. On January 26, 1907, she commenced another action in the same court and against the same parties, in which she claimed to be the legal owner of an undivided one-half of the same land, and prayed for partition thereof. On February 11, 1907, the plaintiff, in compliance with an order of the court, filed a petition in which the foregoing cases were consolidated, and that pleading constitutes the plaintiff's petition in this case.

The facts out of which the controversy arises may in part be stated as follow: W. A. Poole, the husband of the plaintiff, purchased the land from the State Normal School, under a ten-year contract, payments to be made in equal yearly installments. This purchase was made in July, 1878. Defendant Louisa Ann Christensen is the daughter of W. A. Poole and the plaintiff. DeWitt C. Poole and Edward Poole are their sons. The land in controversy was not occupied by W. A. Poole or his family before the sale to the sons, DeWitt and Edward, herein mentioned. In 1890 W. A. Poole sold the land to his sons for the sum of $2916, which amount was paid with three promissory notes executed by them and secured by a mortgage on the land. One of these notes was for the sum of $500, which was shortly afterward paid; another was for $1000, due March 4, 1898, with interest from date—February 3, 1890—at the rate of 6 per cent, payable annually; and the other was for $1416, due March 1, 1905, with interest from date at the rate of 6 per cent per annum, payable annually. The conveyance was made by an assignment of the contract of purchase which their father received from the state. The plaintiff did not join with her husband in this conveyance. She knew of it, however, and would have joined therein, but upon consultation among themselves it was thought to be unnecessary. The boys took immediate possession of the land, and used it for agricultural and pasturing

Poole v. French.

purposes, making their home with their parents, who resided on another place.

In January, 1895, DeWitt C. Poole was prosecuted for bastardy, and in September of that year was convicted and adjudged to pay $75, and the costs of the suit, amounting to $249.25. He paid the judgment March 21, 1896, but did not pay the costs. On February 15, 1901, an execution was issued, and the land in controversy was levied upon and sold as the property of defendant DeWitt C. Poole. The appellant, N. M. French, purchased it at the sheriff's sale for $3500, which he paid at that time. At the end of eighteen months, the land not having been redeemed, the sale was confirmed and the sheriff was ordered to execute a deed to the purchaser, which he did. An action subsequently commenced to set aside this deed was appealed to this court and the deed was sustained. (*Poole v. French,* 71 Kan. 391.) In the bastardy prosecution DeWitt C. Poole employed as his attorney E. S. Ellis, who, prior to the commencement of the term of court at which the conviction occured, received as security for his fees an assignment of the contract which had been transferred to DeWitt C. Poole and Edward Poole when they purchased the land from their father. They both joined in the assignment to Ellis. They received a contract from Ellis in which he agreed to protect the land from taxes, interest and other expenses, and to reconvey to them when they paid his fees and reimbursed him for his expenses on the land. Nothing was paid by them to Ellis, and, after paying taxes and interest until November 13, 1899, he paid the state the whole amount remaining due on the contract and received a patent for the land.

On the 25th of October, 1899, Louisa Ann Christensen purchased the entire interest of her brothers in the land, subject to all liens and encumbrances thereon, which she assumed and agreed to pay. Pursuant to this arrangement she purchased the land from Ellis,

who conveyed to her by a warranty deed. In payment for the land she executed to him her note for $2500, and secured it with a mortgage upon the premises. She also, at the same time, borrowed $1000 from Mrs. Ellis, which was secured in the same manner. These transactions occurred February 10, 1900. On the same day she purchased the plaintiff's interest in the notes and mortgage given by DeWitt C. Poole and Edward Poole as the purchase price of the land. In making this purchase she executed to her mother a promissory note of that date, in the sum of $2207.23, and secured it by a mortgage upon the land. She purchased the note held by W. A. Poole in the same manner. In this transaction between Mrs. Christensen and her parents it was the intention of all the parties that Mrs. Christensen should assume the debt owed by DeWitt C. Poole and Edward Poole to their father and mother for the land, and that the time for payment should be extended to suit her. To carry out this purpose the note executed by her to the plaintiff and the mortgage given to secure its payment were given as a substitution for the notes and mortgage before given by the boys, and it was intended that the transaction should be in effect a continuation of that debt, instead of the creation of a new liability, and in that manner the priority of the purchase-money indebtedness should remain unchanged. In the mortgages executed by Mrs. Christensen in this transaction there was inserted, as evidence of such intent, a clause which reads:

"This grant is intended as a mortgage to secure the payment of the sum of two thousand two hundred and seven and twenty-three hundredths ($2207.23) dollars, with interest at the rate of 4 per cent per annum from the 21st day of July, 1900, in five years from date hereof; the said money being the whole of the second described note and part of the third described note mentioned in a certain mortgage given by D. C. Poole and E. B. Poole, February 3, 1890, to William A. Poole, and by him indorsed to the party of the second part herein, and which mortgage has been satisfied, the

party of the first part herein having assumed the same and this substituted according to the terms of one certain promissory note this day executed and delivered by the said Louisa Ann Poole [Christensen] to the said party of the second part."

On April 1, 1901, at 2 o'clock P. M., the land was sold to the appellant under an execution issued upon the judgment in the bastardy case. The sale was afterward confirmed, and a certificate of purchase issued, April 9, 1901. The deed was issued October 6, 1902. The new mortgage given by Mrs. Christensen to her mother was recorded April 1, 1901, at 8:45 A. M., and was therefore prior to the date of the sheriff's sale. The $3500 paid by the appellant for the sheriff's deed was $3104 more than the judgment lien for the collection of which the execution was issued. This excess was held by the clerk of the district court. On April 8, 1901, C. E. French, wife of the holder of the sheriff's deed, purchased from E. S. Ellis the note executed to him by Mrs. Christensen for $2500, and also the note held by Mrs. Ellis for $1000, and on May 2, 1901, she filed a motion in the bastardy case asking that the $3104 in the hands of the clerk be applied to the payment of the Louisa Ann Christensen notes which she had purchased from Ellis. This application was allowed January 23, 1903, and $2200 of this excess was credited upon the note for $2500, and $900 upon the note for $1000. The note for $2500 was payable February 10, 1905, with interest at 7 per cent, payable semiannually; the one for $1000 was payable at the same time, with interest at the same rate. The theory upon which Mrs. French obtained the money in the clerk's hands was that it, being the excess above the judgment lien for which the land was sold, belonged to whoever owned the land, and that Mrs. Christensen, having purchased the land, was the owner of the money; that, the notes having been given by her as the purchase price of the land, and the land being pledged by a mortgage for the payment of the notes, it would only be right to have

this money applied upon the notes. The court seemed to agree with Mrs. French, for the order was made and the clerk was directed to make such application of it as she desired. Accordingly, $2200 was applied upon the note for $2500 and $900 upon the note for $1000. The fact that the notes were not payable until February 10, 1905, and drew interest at 7 per cent, payable semiannually, does not seem to have been considered. No notice of the aforementioned motion was given to Mrs. Christensen, and she was not present and did not waive such notice, nor consent to the appropriation of the fund.

W. A. Poole died January 2, 1905, and defendant T. D. Troup was duly appointed administrator of his estate by the probate court of Cloud county, Kansas, on the 26th of January, 1907. He duly qualified and has ever since been acting as such.

These are the principal facts upon which this case was presented in the district court. Other facts explanatory of the contentions of the parties will appear in connection with each point discussed.

The first error of which the appellant complains is the order of the district court consolidating the two actions. Without considering whether or not this objection was well taken, we will merely state that, if it was, no prejudice was done by the court's ruling. Considering the complicated and interwoven condition of the facts, it does not seem possible that the two cases could have been so clearly presented in any other manner. Counsel deserve great credit for the labor and ability bestowed in the presentation of the consolidated cases.

A motion to require the plaintiff to elect which cause of action she would rely upon was denied. This ruling is also assigned as error, but what has already been said of the order of consolidation applies to this objection also. No prejudice or error resulted from the denial of the motion.

The basis upon which the plaintiff claims to be the owner of the undivided one-half of the land in contro-

Poole v. French.

versy is that she did not join with her husband in its transfer and has never since made any conveyance thereof, and at his death it became hers under section 8 of the statute of descents and distributions, which reads:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property, in fee simple, upon the death of her husband, if she survives him; provided, that the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance, when the wife, at the time of the conveyance, is not or never has been a resident of this state." (Gen. Stat. 1868, ch. 33, § 8, Gen. Stat. 1909, § 2942.)

It is contended by the appellant that this right, if it existed, has been lost by the fifteen years statute of limitation, and also because of consent, acquiescence and estoppel. It is further claimed that this statute has no application to the property in controversy. In support of this view it is argued that a contract with the state for the purchase of such land is purely statutory, and the procedure prescribed by the statute for its sale must control; and when such procedure has been complied with and the patent has been issued the patentee receives the absolute title in fee, without reserve or contingency. It is also urged that the form of contract used by the state, and the assignment thereof, both of which are prepared by the state, do not contemplate that the wife shall join with her husband in such transfer, but on the contrary the transaction indicates an intention to deal solely with the purchaser. It is urged that the state may choose the manner in which its real estate shall be disposed of, and when a conveyance is completed in such manner to any purchaser no private

19—83 KAN.

person may question such transfer. It is therefore claimed that Ellis received from the state the absolute title to the land, free from the claims of the plaintiff or anyone else, and his grantee received the same title from him.

The facts relied upon to constitute the bar of estoppel, acquiescence and consent on the part of the plaintiff may be stated as follow: The conveyance of the land by her husband to their sons was well known to her at the time, and fully consented to by her. She insisted upon having and receiving as her own the note for $1000 given as a part of the consideration for the land. She well knew that the sons were in the actual possession of the property, using it for pasturing and agricultural purposes, and that they erected permanent and valuable improvements thereon, believing they were the owners of the complete title thereto. She knew of the arrangement between the boys and Ellis. After Ellis had procured the patent to the land she urged and induced her daughter, Mrs. Christensen, to purchase the land from Ellis, and she knew that her daughter executed to Ellis as a part of such purchase a mortgage on the land to secure the payment of the purchase price. In 1889 the plaintiff and her husband separated and had an equitable division of all their property, and each waived all future claims against the estate of the other. In fulfillment of that arrangement she received the property which by the agreement was to be hers, and kept it as her own, and as a part of such division she received a portion of the note for $1416 which was given by her sons as a part of the price paid for the land. She received of the purchase price paid by DeWitt C. Poole and Edward Poole notes in the aggregate sum of $2207.23, which she sold to her daughter for that amount, taking the note sued upon herein therefor. The total purchase price received from DeWitt C. Poole and Edward Poole was $2916, of which $500 was paid soon after the purchase, leaving a re-

mainder of $2416. She therefore received as her own individual property within $709 of the whole price for which the land was sold.

It is claimed that this note is barred by the statute of limitations. The importance of this claim will be understood when it is remembered that the title of the appellant depends upon the sheriff's deed, which rests upon the judgment against DeWitt C. Poole which was rendered in the bastardy action in September, 1895, and became a lien upon the land at that time. The notes given by DeWitt C. Poole and his brother when they purchased the land from their father were dated February 3, 1890, and the mortgage given at that date to secure their payment was of course prior to this judgment, but the mortgage by which the notes were secured contained a clause which reads:

"If said sum or sums of money or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes . . . which are . . . levied against the said premises or any part thereof are not paid when the same are by law made due and payable, then the whole of said sum or sums and interest thereon shall by these presents become due and payable."

It is contended that these notes became due under the provisions of this clause prior to the date indicated upon their face and were barred by the statute of limitations when the note sued upon herein was executed, and that the debt represented by these barred notes lost its priority over the judgment in the bastardy case, and the priority, being lost, could not be revived, even by agreement of the parties, to the detriment of the appellant. It is therefore urged that the transaction amounted simply to a payment of the notes and mortgage given by the boys at the time they purchased the land, that the new note and new mortgage evidenced a new transaction, and the second mortgage became a lien only at the time of its date and was

junior to the lien of the judgment in the bastardy case. Upon the other hand it is contended that when Mrs. Christensen bought the land from her brothers she agreed with them to assume and pay off all the liens and encumbrances existing against the land, including the purchase money due the plaintiff and her husband. Afterward, in compliance with this contract, she arranged with her mother for the payment of the debt which the latter held against the land, and for that purpose gave the note and mortgage upon which this action was commenced. It is argued that, as Mrs. Christensen had assumed to pay this debt as a part of the consideration for the land, she and her mother were competent to make any agreement about the payment thereof that they deemed best, and, they having agreed that the note of Mrs. Christensen then executed should be substituted for the purchase-money notes given by DeWitt C. Poole and Edward Poole, and that the time should be extended for payment, such agreement should have that effect. The note upon which this action was commenced is dated February 10, 1900. Only one of the purchase-money notes was then past due, and neither of them was barred by the statute of limitations.

The facts upon the question of when the old notes became due and when barred are as follow: The old notes were dated February 3, 1890. There were three of them—one for $500, due March 1, 1893, which was subsequently paid; one for $1000, due March 4, 1898, with interest from March 1, 1894, payable annually; one for $1416, due March 1, 1905. No interest was paid on either of them. Mere failure to pay interest does not cause a note to become due under such a clause in the mortgage as the one hereinbefore quoted, but there must be a concurrence of default in both interest and taxes. (*Lewis v. Lewis*, 58 Kan. 563.) No such concurrence occurred as would cause either note to become

barred by the statute of limitations before the execution of the note upon which this action is founded.

Upon these facts the district court held that the plaintiff was barred from any interest she might have had in the land under the statute of descent by the fifteen years statute of limitation, and also by estoppel, consent, ratification and acquiescence. In this decision the court followed the case of *Jenkins v. Dewey*, 49 Kan. 49. Counsel have criticised this decision to some extent, but an examination of the case shows that the same objections and the same arguments were made when that case was presented that have been made here, and the court was fully advised when that decision was written. It has stood for over twenty years, and we see no good reason for disturbing it now. This disposes of the partition feature of this case. The plaintiff has no interest in the land.

As to the note, we conclude that it is not barred by the statute of limitations. The debt which it represents was in full legal force when the note was executed by Mrs. Christensen to the plaintiff. At that time they were debtor and creditor as to that indebtedness, and were fully competent to make any arrangement for its payment that was satisfactory to themselves. No good reason exists why they should not be free to contract with reference thereto. They were the only persons interested. An extension of time simply prolonged the situation and did not affect the rights of other parties interested in the mortgaged property. It being their intention to preserve the status of the debt as to liens and priority, they should not be deprived of that privilege. Every reasonable interpretation should be given to their agreement to carry out their intention. We think the transaction between Mrs. Christensen and her mother at the time the note involved in this suit was executed amounted to a substitution of the new note for the then existing debt and an extension of the time in which it should be paid.

The priority of liens was not changed or disturbed by this arrangement.

The action of the court in applying the excess of the money paid at the sheriff's sale upon the note of Mrs. Christensen was without jurisdiction and void. Mrs. Christensen, being then the owner of the land, was also the owner of the money. There was no excuse for the court to use the money in the payment of her debt, not yet due nor payable for several years, without her knowledge or consent. The order was made in an action to which she was not a party, and without notice, knowledge or consent on her part, which of course made it void. The trial court, in its judgment entered in February, 1908, adjusted this matter long after the notes became due, by rendering judgment against Mrs. Christensen in favor of Mrs. French for the amount then due and payable upon the notes, and offset this judgment by a credit for the amount of money received by Mrs. French upon the void order of the court, with interest thereon from the date of the order to the date of the judgment. This left a small balance due from Mrs. Christensen. Whether this be denominated subrogation, or some other name be given to it, is of very little consequence. It resulted in an adjustment which was as just and fair to both parties as could have been devised at that time. We think the action of the trial court in this matter should be commended and upheld.

These conclusions dispose of the case. There are several other questions discussed by counsel, but in the view the court has taken it will be unnecessary to consider them. We have carefully examined the voluminous abstract and the likewise extended briefs of counsel, and we are unable to find any material error on the part of the district court. The decree is affirmed.

OPINION DENYING A REHEARING.

The opinion of the court was delivered by

GRAVES, J.: A petition for a rehearing has been filed in this case by the appellant, in which he calls attention to parts of the opinion heretofore filed which we think require some explanation, to avoid misunderstanding as to the points criticized.

It is strongly urged that the opinion in this case in effect overrules the case of *Poole v. French*, 71 Kan. 391. We do not concur in this claim. It is our view that the entire scope and extent of the case referred to was to establish the validity of the sheriff's deed mentioned therein. That case decides that the judgment against DeWitt C. Poole was a valid lien upon his right, title and interest to the land in controversy, and that the sale and conveyance thereunder were valid and effectual and conveyed to N. M. French, the purchaser, a complete title to the interest of DeWitt C. Poole therein. French bought the land at the sale. He paid the money bid therefor and received a valid conveyance for the interest owned by the judgment debtor, DeWitt C. Poole. The right, title and interest of DeWitt C. Poole, by this transaction, was conveyed to N. M. French, but the surplus of the money for which it was sold after satisfaction of the judgment belonged to DeWitt C. Poole or his assigns, free and clear of the lien held by French. DeWitt C. Poole might dispose of this surplus to whomsoever he chose, and he did dispose of it to Louisa Ann Christensen when he sold the land to her. While he could not convey any right, title or interest in or to the land as against the judgment lien, his conveyance would operate as an equitable assignment of the surplus money for which it was sold, and we think that the fund in question was in this way transferred to Mrs. Christensen. Having been conveyed to her, she became the owner thereof. The court could not make a valid order

disposing of such fund in an action to which she was not and had not been a party, and without notice, knowledge or consent on her part.

In the preparation of the opinion it was erroneously said that this fund belonged to her for the reason that she owned the land; but, being her property, she was entitled to have it protected regardless of the manner in which it was acquired.

To recapitulate: William A. Poole bought this land from the state as school land. He assigned his contract to his two sons. One of them had trouble, and they assigned the contract to Ellis, who paid off the amount due the state and received a patent for the land, which he held as security for the repayment of the amount paid by him. Louisa Ann Christensen bought the remaining equity of DeWitt C. Poole, agreeing to pay off all the liens and encumbrances on the land. In pursuance of this agreement she purchased the interest of Ellis, giving to him a note for $2500, which she secured by a mortgage upon the land, she having received a conveyance of the land from him. Mrs. C. E. French, wife of the appellant, then purchased this note from Ellis, and by motion made in the action wherein the judgment against DeWitt C. Poole had been rendered, and wherein the surplus arising from the sale of the land under the judgment was deposited, requested the court to apply such surplus upon the notes of Louisa Ann Christensen, which she, Mrs. French, had acquired from Ellis, claiming that Mrs. Christensen, having purchased the land, became the owner of the surplus arising from the sheriff's sale and it would be right that her debt for the purchase of the land should be paid with such surplus. The court took this view of the situation and made the order as requested. Of this motion and order Mrs. Christensen had no notice or knowledge. As before stated, we hold that the conveyance by DeWitt C. Poole to Mrs. Christensen operated as an assignment of this surplus fund to her.

It is also claimed that the court ignored the cross-petition in error filed by M. M. Poole. The only points in this cross-petition were that the trial court erred in holding that she was not the owner of one-half of the property as the widow of W. A. Poole, she not having joined him in the conveyance thereof, and in further holding that if she did inherit such interest in the land it had been lost by the statute of limitation and estoppel. These two points were elaborately discussed by the parties and were the two first propositions mentioned and decided in the opinion. The opinion does not say that these points were decided because raised by the cross-petition. Indeed, we felt that inasmuch as they were controverted questions it would be sufficient to decide them without express reference to the manner in which they were presented.

We notice, however, that one matter in this connection was omitted, and that is the costs made by the filing of the cross-petition in error. The cross-petitioner, having failed in her contention, should pay the costs caused by filing her cross-petition, and we will correct this omission now. The points contended for in the cross-petition were prominent questions in controversy. To what extent they increased the costs of the appeal can not be accurately determined. We think, however, that an equal division of the costs will be approximately fair and just, and it is so ordered.

The petition for a rehearing is denied.