No. 23,315.

W. A. McCULLOUGH et al., *Appellees, v.* ROBERT S.
McCULLOUGH et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. ACTION TO QUIET TITLE — *Partially Tried — Case Dismissed by Acquiescence of Both Parties—Issues Not Res Judicata.* Where an action to quiet title to real property is commenced, and the trial proceeds to a point where the court makes a finding of fact that the defendants "have some interest in the property," but does not define or determine the nature or extent of that interest, and dismisses the action at the cost of the plaintiffs, and both plaintiffs and defendants acquiesce in such dismissal, there is no adjudication which precludes a new action, and the question of defendants' interest in the property is not *res judicata.*

2. DEED—*Absolute Conveyance—No Express Trust Created.* An instrument conveying "for a valuable consideration" all the interest of a brother and three sisters in a dead brother's estate to another brother and four sisters "to have and to hold forever," examined, and held to be an absolute conveyance, and held not to create an express trust notwithstanding the concluding language of the instrument reciting a further agreement that the property conveyed should be used to pay the debts of the dead brother and to conduct a business in which he was interested.

3. SAME—*No Implied Trust Created.* The facts in evidence showing how the foregoing instrument came to be executed, together with the instrument itself, examined, and *held,* that no implied trust arose by virtue of the facts, circumstances, contract, and instrument.

4. ADVERSE POSSESSION—*Interest in Real Estate—Barred by Over Fifteen Years Adverse Possession—Estoppel.* When certain married heirs to a tract of realty other than the homestead conveyed their interest therein to grantees but the spouses of the grantors did not join in such conveyance, and the grantees promptly recorded their deed and entered into possession, and paid the taxes and made valuable improvements on the property, and have held and occupied it openly, exclusively and adversely for over fifteen years, the spouses of the grantees are barred of all interest in the property, both by the statute of limitations and under the principles of estoppel.

5. SAME. Open, exclusive, adverse possession of realty for over fifteen years, together with the payment of taxes and the erection of valuable permanent improvements by claimants in possession, renders immaterial the precise character of the instrument upon which their title originated. Under such circumstances it is immaterial whether their title was originally founded upon any written instrument.

32—109 KAN.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed July 9, 1921. Affirmed.

*Edwin Anderson,* of Council Grove, for the appellants.

*W. S. Kretsinger,* of Emporia, and *W. J. Pirtle,* of Council Grove, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action between certain members of a family of two brothers and seven sisters and their spouses to determine what interest, if any, some of them had in fifty acres of land which they inherited from a deceased brother who died intestate.

This brother, John J. McCullough, single, died in July, 1903, seized of fifty acres of Morris county land, a half interest in an incumbered residence in Herington, and a half interest in a run-down telephone plant at Herington. He also had an insurance policy for $1,000 which was of questionable validity but which eventually was collected. His debts amounted to $1,400.

Shortly after John's funeral, his two brothers, Robert and William (W. A.), and their three married sisters and four single sisters, all of age, held a meeting in Herington in which they agreed that William and the four unmarried sisters should take over all of the dead brother's property and pay his debts and carry on the telephone plant, and that William should serve as administrator. To that end an instrument in writing was executed by Robert and the three married sisters conveying to William and the four unmarried sisters all the interest of the grantors in John's property. The grant was absolute and unconditional unless a qualification thereof was contained in the concluding lines of the instrument, to wit:

"It is further agreed that all the property and interest hereby sold and assigned is to be used in paying the debts and carrying on the telephone plant. We also recommend W. A. McCullough for administrator of the estate of John J. McCullough."

Pursuant to this arrangement, W. A. McCullough and his four sisters, the grantees, entered into possession of fifty acres of land in dispute in 1903, and have exclusively occupied it as part of a farm belonging to them. On it they have erected a

house and barn and other improvements to the value of $7,000. William, as administrator, settled John's estate under supervision of the probate court and was duly discharged. All of John's debts were paid. William and his four unmarried sisters conducted the telephone plant for more than a year without other compensation than what they might hope for by increasing its value through improving its physical condition, improving its service, and raising the telephone rates. In these efforts they succeeded, and afterwards they sold and disposed of the telephone plant at a profit which they divided among themselves.

In 1910, one of the unmarried sisters died, testate, bequeathing all her property to William and the surviving unmarried sisters; and in 1919, some sixteen years after the family compact of 1903, William and these three sisters brought suit against the grantors of the instrument of 1903 to quiet their title to the fifty acres in dispute. Issues were joined, and the trial court made a finding—

"That the defendants have some interest in said property, and denies the prayer of the plaintiffs to quiet their title to said land.

"It is therefore ordered and adjudged that said cause be and the same *is hereby dismissed*, at the cost of the plaintiffs."

Later a new action was begun by William and his three unmarried sisters who were the grantees of the instrument of 1903 against Robert *and his wife*, and against the three married sisters *and their husbands*, setting up their title to the property, narrating the death of John, the family compact of 1903 and setting up the instrument executed pursuant thereto, the death of the sister in 1910 and plaintiffs' succession to her estate, and praying for a determination of their exclusive ownership and for partition between plaintiffs, and for the quieting of their title against Robert and the married sisters and their spouses.

Issues were joined, and on the evidence presented the trial court gave judgment for plaintiffs.

Defendants appeal, urging that the instrument of 1903 created an express trust or that the facts warranted the finding of an implied trust, and that the defendants who are the spouses of the grantors of the instrument of 1903 and who never signed that instrument cannot be barred of their in-

terest in the property. They also rely to some extent upon the finding in their favor in the original suit which was dismissed.

Touching the finding in the original action, it should be noted that it was a finding of fact upon which no final judgment was entered. The action was dismissed. The finding was no more than an expression of the trial court's opinion at the time—an opinion which in the present case, upon a later, more extended and formal hearing, was abandoned by the trial court. There being no judgment on the original finding of fact, and indeed the finding was too indefinite upon which to found a judgment, the matter was not *res judicata* when the present action was begun. (*Auld v. Smith*, 23 Kan. 65; *Smith v. Auld*, 31 Kan. 262, 1 Pac. 626; *Mitchell v. Insley*, 33 Kan. 654, 7 Pac. 201.)

Doubtless in the first case the defendants might have pressed their advantage and had their interest ascertained and a judgment entered in their behalf while the court was disposed to uphold their view of the facts. But they not only acquiesced in the dismissal of the original action, but in the present action their pleadings show that they still considered the facts to be in issue and did not plead the former finding of the court nor any former adjudication. Manifestly they evinced a design to have the cause heard and determined without regard to the earlier inconclusive proceedings.

Passing to the contention that the instrument of 1903 created a trust either express or implied, the court is not impressed with the argument that the concluding lines of the instrument, quoted above, show an intention on the part of the grantors to create a trust. The instrument is a conveyance, complete and unqualified in its terms, of all the interest of the defendants in the real and personal estate of their dead brother. The instrument recites the receipt of "a valuable consideration" for the property conveyed to the plaintiff grantees. But if it were considered that this instrument does import a trust that the property was to be used to pay the debts and conduct the telephone plant, the trust was faithfully executed, and the consideration for its faithful execution by the grantees (or trustees) was the absolute conveyance of the grantor's interest in the estate. The debts were paid and the telephone property was conducted until it could be and was

rehabilitated and sold. It cannot be inferred that the grantees were never to part with the telephone property. The terms of the instrument were not that the property was given in trust until the trust (if there was a trust) could be accomplished, but the grant was of "all our right, title and interest of every kind and nature . . . to have and to hold forever," etc. It was not an express trust, nor did the compact and instrument import a return of any part of the property to the grantors.

A determination of the question whether the instrument and the pertinent facts warranted a finding of an implied trust requires an examination of the evidence. There was no pleading nor proof of fraud or mutual mistake in the execution of the instrument. One of the defendants (Mrs. McNicol) did testify that she did not understand that by the written instrument she had deeded her interest absolutely to the grantees, and Robert testified that he received no consideration therefor, yet the evidence for the plaintiffs clearly showed that the meeting of the family was held on the initiative of Robert, and that the family compact was largely undertaken at his suggestion. Robert said that he would not take hold of the telephone plant and did not want to be responsible for the dead brother's debts. At that time, in 1903, not only was the telephone plant in bad condition and unprofitable, but this 50 acres of land now in dispute was not worth much money— $15 to $30 per acre. The estate of John was regularly settled under the supervision of the probate court, and the sale of the telephone plant was duly accounted for as part of that estate. The testimony of William narrated that between the grantors and grantees it was agreed that if the latter would assume the debts of John's estate the grantors would deed all their interest to the grantees.

"Q. Then I understand you and Margaret McCullough, Nannie and Amanda agreed to pay the debts of the estate as a consideration of this conveyance? A. We did.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. For what consideration? A. That we were to pay the debts.
"Q. Did you pay them? A. We did.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"At the time of my brother's death the condition of the telephone plant was very poor, construction was not sufficient for a plant of that size

. and. we had to get cable and new telephone lines; had to practically rebuild it. I did that after the deed was made to us and raised the rates 25 per cent. At the time my brother died we talked about the solvency of the estate, and the indebtedness was quite enormous and it looked like a bad proposition to pay it out under the conditions. My brother said he didn't think it would pay out under the conditions at that time, and that he would not take hold of it and become responsible for the debts. The grantees in the deed formed a company and worked together to take care of the debts of the estate, which arrangement has continued until this time, and the defendants (appellants) have never asserted any rights or claimed any interest in the property before this suit was filed."

This evidence precludes any fair inference of an implied trust. It was a fair and square bargain for better or worse; if the grantees could make John's estate pay out with a profit to themselves, well and good; but if they could not, they should settle the debts of the estate and free the grantors of all responsibility therefor.

Coming now to the interest of the spouses of the grantors: Their interest is that inchoate right of a spouse in the real property which a husband or wife has owned and conveyed at some time during the existence of the marriage relation, and where the spouse has not joined in a conveyance of the property, and where the property has not been required for the payment of debts. The spouses of the grantors did not join in the instrument of conveyance of this 50 acres of land. The grantees have been in open, exclusive, adverse possession of the 50 acres for over fifteen years. Since there was no trust either express or implied, that fact would bar the grantors— even if there was no conveyance of any sort from anybody. The grantees have used the property as their own, have paid the taxes, and have made lasting and valuable improvements of the property, all with knowledge of or notice to the defendant grantors. Those facts would go far to estop the grantors and their spouses from asserting any claim to the property even if the fifteen years' statute of limitations had not fully run. Do these facts and circumstances create any bar or estoppel against the spouses of the grantors? It has been held that when a wife who held title to real property conveyed it without her husband joining in the deed, the inchoate right of the husband who was apprised of the facts and knew that the grantee was claiming to hold adversely and exclusively, was effectually barred in fifteen years. (*Jen-*

McCullough v. McCullough.

*kins* v. *Dewey,* 49 Kan. 49, 30 Pac. 114.)   The same question is discussed at length in *Poole v. French,* 83 Kan. 281, 111 Pac. 488, and it was held (Syl. ¶¶ 2, 6, 8) that the statute of limitations began to run against a spouse who had not joined in her husband's conveyance of realty other than the homestead as soon as the husband made the conveyance and the grantee took possession of the property.   Perhaps something like notice to such spouse should be added to that to make a complete statement of the correct rule.   Here the grantees took possession in 1903 and took up the burden of paying John's debts; they recorded their instrument of conveyance; they paid the taxes; they made valuable improvements on the property; they occupied adversely and exclusively for nearly seventeen years before either the grantors or their spouses, all of whom apparently had knowledge of the facts, or notice putting them on the duty of inquiry, asserted any claim to the property; and under such circumstances the trial court properly held that the spouses of the grantors were barred, and such conclusion was justified under the principles of estoppel (*McCullough v. Finley,* 69 Kan. 705, 77 Pac. 696) as well as under the statute of limitations.

Defendants argue that the instrument of 1903 was not a deed, but we hold otherwise.   It was in text and in effect a deed, and under the evidence it was so intended.   Moreover, the long adverse possession and other facts narrated above rendered the nature of the instrument immaterial, and, indeed, rendered the existence of the instrument itself immaterial.

The judgment is affirmed.