No. 26,587.

THE CITIZENS STATE BANK of Edgerton, Mo., *Appellant*, v. JOHN
SHAY et al., *Appellees*.

#### SYLLABUS BY THE COURT.

BILLS AND NOTES—*Holder in Due Course—Overdue Interest as Notice of Dishonor*. In an action to foreclose a mortgage given to secure a negotiable promissory note due five years after its date and providing for the annual payment of interest, which note had been transferred to the plaintiff by indorsement for value before its maturity and on which there were at the time of its transfer three installments of interest due, the mortgage having been transferred to the plaintiff by written assignment, evidence showing that the payee of the note told the plaintiff, at the time it was transferred, that he did not endeavor to foreclose the mortgage because he understood that under its conditions it could not be foreclosed on account of failure to pay interest alone, is not sufficient to show that the note was dishonored when the plaintiff acquired it, that the plaintiff was not the holder of the note in due course, that the plaintiff did not acquire the note in good faith, nor to charge the plaintiff with notice of part failure of consideration for the note.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLLEY, judge. Opinion filed April 10, 1926. Reversed.

*Ernest E. Blincoe*, of Fort Scott, for the appellant.
*B. S. Gaitskill*, of Girard, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.:   The plaintiff sued to recover on a negotiable promissory note given by the defendants and to foreclose a mortgage given by them on real property to secure the payment of the note.   The note was indorsed by the payee, P. W. Noland, and the mortgage assigned by him to the plaintiff.   A partial defense was that the real property, which was represented to be two hundred acres and which was valued at $80 an acre, had been received by the defendants from P. W. Noland in exchange for the note and mortgage and a stock of merchandise, and that there were only 192.04 acres of land.   The defendants asked that the shortage of acreage at $80 an acre, $636.80, be set off against the note.   Judgment was rendered for the plaintiff for the amount of the note less the $636.80 and interest thereon, and the plaintiff appeals.

Bills and Notes, 8 C. J. pp. 478 n. 35, 1046 n. 9, 1047 n. 10; 11 A. L. R. 1277; 3 R. C. L. 1080.

Citizens State Bank v. Shay.

The note was as follows:

"PITTSBURG, KAN., Sept. 8, 1919.

"Five years after date, for value received, we promise to pay to P. W. Noland or order at the banking office of the First National Bank of Pittsburg, Kan., two thousand dollars ($2,000), with interest on the said sum from date hereof at the rate of six per cent per annum, payable annually.

JOHN SHAY.

"Privileged to pay at any time.                    BETTIE J. SHAY.
"Secured by R. E. Mtg."

The note was indorsed on the back as follows:

"We, the undersigned, indorsers of this note, each severally hereby expressly waive presentment, demand, protest and notice of protest of this note, and all defenses that might be made because of a failure to make presentment, demand or protest of this note at the time of its maturity.

P. W. NOLAND.

CITIZENS' STATE BANK, Edgerton, Mo.

S. C. FRICK, *Cashier.*

"Sept. 8/20, paid int. 120.00.                    W. W. LOTT, *Prest.*
"Four ten-cent revenue stamps."

The mortgage contained the following:

"Now, if said party of the first part shall pay or cause to be paid to said party of the second part, his heirs or assigns, said sum of money in the above-described note mentioned, together with the interest thereon, according to the terms and tenor of the same, then these presents shall be wholly discharged and void; and otherwise shall remain in full force and effect. But if said sum or sums of money, or any part thereof, or any interest thereon, is not paid when the same is due, and if the taxes and assessments of every nature which are or may be assessed and levied against said premises, or any part thereof, are not paid when the same are by law made due and payable, then the whole of said sum and sums and interest thereon shall, and by these presents, become due and payable."

The petition alleged that on June 28, 1924, P. W. Noland, for value received, duly sold, indorsed and delivered the note to the plaintiff, who then became the owner and holder thereof. The defendants denied that the plaintiff acquired the note for a valuable consideration, and denied that the plaintiff was the owner and holder thereof. They alleged that "whatever interest the plaintiff acquired in and to said note and mortgage, if any, was subject to all of the equities that might be claimed against it by these defendants." No fraud was alleged.

At the time the plaintiff acquired the note, there were three installments of interest due and unpaid. The principal witness for the plaintiff was its cashier, who testified in substance that the note

was acquired by the bank on or about June 28, 1924, for value, without notice of any infirmity therein. He also testified that Noland had then stated to him that payment of the interest had not been compelled by foreclosure of the mortgage because Noland understood that the mortgage could not be foreclosed on account of failure to pay interest alone. There was no evidence to show that fraud had been practiced on the defendants to procure their signatures to the note or the mortgage. There was no evidence to show that the bank had any knowledge of the shortage in the land received by the defendants from P. W. Noland.

The defendants argue that the evidence of the cashier of the plaintiff was of such a nature and was so given as to cause the court to entirely disbelieve it. That does not dispose of this case. The law of negotiable instruments is involved. Under that law, it was incumbent on the defendants to prove not only the shortage in the land, but also that the plaintiff had knowledge of the shortage or that the plaintiff had knowledge of such facts that its act in taking the note amounted to bad faith. (R. S. 52-506.) The cause was tried without a jury. The judgment shows the following findings:

"That the plaintiff took no further or greater rights in said notes and mortgage than that of the said P. W. Noland;

"That the same was acquired by said plaintiff subject to the right and claim of these defendants in this action;

"That the said plaintiff in this action did not acquire said note and said mortgage in good faith;

"That the transaction and circumstances under which it did acquire said note and mortgage was in bad faith;

"That the plaintiff was not a holder of said note and mortgage in due course, and that the said note and mortgage came to the said plaintiff dishonored."

The plaintiff contends that there was no evidence to support those findings.

The evidence to show the three unpaid annual installments of interest; to show the explanation given by P. W. Noland to the plaintiff concerning why action had not been commenced to collect the installments of interest and to foreclose the mortgage; and to show the terms of the note and mortgage, was all there was which could in any way support those findings.

The pertinent condition of the mortgage was that if the interest were not paid when due and the taxes and assessments were not

paid, then the whole sum secured by the mortgage should become due and payable. Similar conditions contained in a mortgage were considered in *Lewis v. Lewis*, 58 Kan. 563, 50 Pac. 454, where it was held that:

"To make the whole debt due before the time stated in the notes and to authorize a foreclosure, two conditions must concur, namely: default in the payment of a sum when due, and default in the payment of the taxes on the mortgaged premises when due." (See, also, *Poole v. French*, 83 Kan. 281, 292, 111 Pac. 488.)

We quote from 8 C. J. 478, as follows:

"By the weight of authority the fact that an installment of interest on an instrument is overdue and unpaid is not of itself sufficient to affect the purchaser with notice that the instrument is dishonored or to put him on inquiry concerning the same, although in several jurisdictions the opposite view has been taken, especially in cases where the interest was overdue for several payments. Even in those jurisdictions holding the majority view, however, this fact is allowed to be considered in connection with other circumstances as evidence of notice. And while it has not been expressly decided, it may be that a different rule might be applied where there was actual knowledge of nonpayment of interest as distinguished from a mere failure to indorse payments of interest."

Pertinent parts of the negotiable instruments law should be noticed. Section 52-305 of the Revised Statutes reads:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

In the present action, there was a partial failure of consideration. To the extent that there was such failure of consideration, there was a defense against the note in the hands of P. W. Noland.

Section 52-505 of the Revised Statutes reads:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

There was nothing to show that the signatures to the note in controversy were obtained by fraud, duress, force and fear, or other unlawful means, or for an illegal consideration, or that it was negotiated in breach of faith under such circumstances as amounted to a fraud.

Section 52-506 reads:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

Outside of the evidence concerning the interest, there was no evidence to show that the plaintiff had any actual knowledge of any infirmity or defect in the note or knowledge of any facts which would show that its action in taking the instrument amounted to bad faith.

Part of section 52-509 of the Revised Statutes reads:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

What constitutes defective title is defined by section 52-505 of the Revised Statutes. It has been noted that there was no evidence to bring this case within that statute.

In *Ireland v. Shore*, 91 Kan. 326, 329, 137 Pac. 926, this court said:

"Suppose the defense to a note be simple breach of warranty. By producing the note properly indorsed, the indorsee establishes *prima facie* that he is a holder in due course, that is, among other things, that he took the note without notice of any infirmity. This *prima facie* case is not affected by proof of the breach of warranty. The burden rests on the maker to go further and show notice of infirmity. The rule is otherwise when the defense is defective title, which is defined by the negotiable instruments law. [R. S. 52-505.]"

In *Bank v. Hildebrand*, 103 Kan. 705, 708, 177 Pac. 6, the following is found:

"It is urged that the verdict of the jury, as well as the finding of fact that the bank acted in good faith, is contrary to the evidence, and especially the testimony of the cashier, to which we have referred. The argument is, that when a person knows there may be a set-off or counterclaim against the note by the time it matures, he cannot acquire the note free from an infirmity. The argument is not sound. Every purchaser of a promissory note knows that, as between the maker and the payee, there may, before the note matures, arise a set-off or counterclaim in favor of the maker, but this will not prevent the purchaser from being a holder in due course; nor is the fact, of itself, evidence of bad faith in purchasing."

The above language was quoted in the opinion in *Thresher Co. v. West*, 108 Kan. 875, 196 Pac. 1061, where the court in the syllabus also said:

"In an action by an indorsee of promissory notes given for the purchase

price of a farm tractor where the answer and cross-petition set up failure of consideration because of a breach of warranty in the contract of sale and alleged that plaintiff was not a holder in due course, *held,* that it was error to instruct that if the plaintiff purchased the notes with knowledge of the terms and conditions of the contract under which the tractor was sold, the judgment should be for the defendant. (*Bank v. Hildebrand,* 103 Kan. 705, 177 Pac. 6.)

"It is further held that the depositions taken by the plaintiff and offered in evidence by the defendant and also by the plaintiff show that the plaintiff was a holder of the notes in due course, and there being no testimony to contradict the depositions, the plaintiff was entitled to judgment for the amount due on the notes, notwithstanding the general verdict in defendant's favor."

The findings were not supported by evidence. The plaintiff was entitled to judgment on the evidence.

The judgment is reversed, and the court is directed to render judgment for the plaintiff for the full amount of the note sued on and interest thereon.